### 3107. KIMBALL *v.* SMITH, sheriff.

If bail-trover process against more than one defendant is placed in the hands of a sheriff for execution, and he finds the property in the possession of one of them, and takes from him a bond with good security, in terms of the statute, conditioned for the production of the property, or the payment of the eventual condemnation money in accordance with the judgment of the court, he can not thereafter seize the property, and is consequently relieved from the duty of taking bond from the other defendants, or from arresting them for failure to give bond. The law only requires the sheriff to have before the court either the specific property or a solvent bond standing in the place of it.

DECIDED SEPTEMBER 30, 1911.

Money-rule; from city court of Monroe—Judge Stone. December 13, 1910.

*J. H. Felker,* for plaintiff. *Napier & Cox,* for defendant.

HILL, C. J. Mrs. Kimball instituted trover for a horse, against Biggs, Hester, and Doss jointly, and made affidavit, for the purpose of requiring bail, that the horse was in the possession of the three defendants. The sheriff executed the bail process by taking from Hester and Doss separate bonds for the eventual condemnation money. It appears that these two, and not Biggs, had the horse in their possession. No bond was taken from Biggs, nor was he arrested; he was simply served with a copy of the trover suit. He was insolvent. At the trial of the trover case the plaintiff recovered a judgment against Biggs for the value of the property, but the jury found in favor of the other two defendants. It seems that this result was due to the fact that the plaintiff had sold the horse to Biggs under an unrecorded contract of conditional sale, and that Biggs had sold it to the other two defendants, who purchased without notice, so that at the trial of the trover suit Biggs was estopped from denying the plaintiff's title, and even from setting up

outstanding title in his codefendants; but these codefendants, not being estopped to deny the plaintiff's title, were released by the judgment. The plaintiff, being unable to make the amount of the judgment out of Biggs, on account of his insolvency, brought a rule against the sheriff, claiming damages for the sheriff's neglect to take from Biggs a bond for the eventual condemnation money.

At first we were under the impression that the sheriff was plainly liable, that where he has bail process against three defendants in the same suit, he must take either joint or several bonds with ample security from them, and from all of them, and that since he had failed to do this in the present case, the trial court erred in holding him not liable. On maturer reflection we have come to the conclusion that our former opinion was incorrect. A trover suit is somewhat of a mixed action, under the practice of this State. The plaintiff in it has the option of recovering either the possession of the specific property, or damages for the unlawful conversion of it,—that is, the value of the property. If the plaintiff has reason to fear that the specific property will be put beyond the reach of the court's processes, he may make additional affidavit, alleging that the defendant has the possession, custody, or control of the property at the time of the making of the affidavit, and that there is danger of his eloigning it or carrying it away; whereupon it becomes the duty of the officer to take such steps as will be adequate to have before the court, at the time of the final trial of the case, either the specific property, or what is its legal equivalent,—a valid bond conditioned either for the forthcoming of the property or for the payment of the eventual condemnation money, as the plaintiff may elect. The law has pointed out the method which the sheriff shall pursue to attain this end. This law is set forth in the Civil Code (1910), §§ 5150-52. The method there outlined for the execution of a bail process is that the sheriff shall first give the defendant opportunity of giving a bond of the nature stated above. If the defendant refuses to give such bond, the sheriff shall seize the property, if he can find it. If he does not get a bond, and if he can not find the property, he then arrests and imprisons the defendant for the purpose of compelling him either to produce the property or to give bond. But these steps are to be taken only in the order named. He can not seize the property if adequate bond be tendered. He can not arrest the defendant, whether bond be ten-

dered or not, if he can seize the property. As we have said already, the object of the bail process is to bring into the custody of the court the physical property out of the possession of him who holds it at the time the bail process is sued out, or to require a bond which will put the court in a position in which it will be in its power to enforce its process as if the property had been seized. Unquestionably the failure of the sheriff to perform his duty in this regard, where bail process has been placed in his hands, renders him liable for the money. *Edwards* v. *Harris, 7 Ga. App.* 209 (66 S. E. 814), and cases there cited. Now, if the sheriff, having bail process against three distinct defendants in the same case, goes forth to execute it and finds the property physically held by one of them only, and the person so holding it puts it into the possession of the sheriff, this would be a valid execution of the process on the sheriff's part. Similarly, if this same defendant so possessing and controlling the particular property gives to the sheriff a bond conditioned as the statute requires, that is, either to produce the property or to pay the eventual condemnation money that may be awarded against him because of that possession which he is holding, the sheriff can not thereafter seize the property, nor can he arrest any one else on the process; for the reason that seizure of the property and arrest of the principal can be exercised only when the sheriff has not taken a bond which stands for the same purposes as would be accomplished by the seizure of the property from the particular person who holds possession of it. If at the trial of the case it turns out that this person who holds the property in his possession was holding it either for himself or for one of the other defendants,—that is, if this possession is either his own or is the legal possession of one of the other defendants,—and it further turns out that the plaintiff in the trover suit would be entitled to take that property away from that possession—if the effect of the judgment in the case is to establish the title in the plaintiff, carrying with it a right to possession of the property, judgment can be taken upon the bond, though executed by only one of the defendants; and, it being a bond for the production of the property or for the payment of the eventual condemnation money, it is fully sufficient to answer every purpose that could be accomplished if the property were before the court.

To apply the principle to the case before us: If the sheriff, in-

stead of taking bond from the defendant who had the property, had done what is the legal equivalent,—that is, had seized the property and had had it before the court for disposition on the trial of the trover case,—all that the court could have done would have been to restore the property to those defendants who had given the bond, and to enter up a judgment for damages against the defendant Biggs. When the sheriff had the bond of these two defendants before the court, he had what was the exact legal equivalent of the property itself. If it had turned out on the trial of the case that the possession which was held by the two defendants who gave the bond was in any sense the possession of Biggs, the bond would have been answerable for the judgment against Biggs. But the bond was exonerated in this case, for the all-sufficient reason that the possession against which the bail process was directed was not the unlawful possession of Biggs, but was the lawful possession of the two defendants who gave the bond, a possession based on a title superior to the plaintiff's. It will be seen, therefore, that when a sheriff does not take bond from each and all of the defendants, he takes the risk of showing that he took it from one of them who had the property physically in his control; and this bond, under all the circumstances of the case, is adequate to give the court the same power or control over the property as if the property had been seized under the bail process and was being held by the officer for disposition. Any other rule than the one we are now announcing would put it in the power of the plaintiff in a trover suit to use the writ most oppressively against innocent persons joined as defendants. In other words, any would-be plaintiff standing in such relation to a prospective insolvent defendant that the latter could not deny his title to a piece of property in fact held by some third person by a superior title could, by joining this solvent true owner, compel him to give up his property into the possession of the sheriff, or else procure bond from an insolvent codefendant against whom the plaintiff would be entitled to take judgment. In rules against sheriffs the well-established doctrine is that the plaintiff must show injury and damage to himself, as well as neglect of duty on the part of the sheriff. The proximate cause of the plaintiff's loss in this case, under all the facts, was not neglect on the sheriff's part, but was the plaintiff's own lack of title to the property, as against the person who held it.  *Judgment affirmed.*