*Hewlell & Dennis, Lindley W. Camp,* contra.

20969, 20971. GARY *v.* CENTRAL OF GEORGIA RAILWAY COMPANY; and *vice versa.*

DECIDED SEPTEMBER 30, 1931.

W. D. Lanier, W. K. Miller, for plaintiff.

W. Inman Curry, for defendant.

BELL, J. J. M. Gary sued Central of Georgia Railway Company for damages for the alleged breach of a contract of employment. In 37 Ga. App. 744 (141 S. E. 819), this court held that the petition set forth a cause of action, and thus was not subject to general demurrer, as was ruled by the trial court, but that certain items of the damages claimed were not recoverable and that the court properly sustained demurrers to these items. In 40 Ga. App. 201 (149 S. E. 309), a verdict and judgment in favor of the defendant were ordered to be set aside because the defendant's answer was filed too late and should not have been considered. On May 5, 1928, the plaintiff amended his petition, by increasing the amount of his claim for lost wages from $6,260 to $11,970.91, so as to cover the additional amount "which he would have earned from the date of filing his petition to the date of trial," and "which he has lost by reason of his wrongful discharge." During the progress of the trial now under review, the defendant, on May 22, 1930, made a further amendment of like import for the purpose of bringing his claim "down to date," and alleging the sum of $17,500 to be the amount of his damages at that time.

An agreed statement was introduced in evidence, by which it appeared that the plaintiff ceased to be a member of the Brotherhood of Locomotive Engineers by resignation on December 3, 1924. The defendant contended that under a proper construction of the petition, even as adjudicated, the plaintiff was not entitled to recover more than nominal damages, since the petition contained no allegation to show that the plaintiff continued

to be a member of the brotherhood after his alleged discharge, but that in any event the recovery should be limited to salary from August 8, 1924, the date of the alleged discharge, to his resignation on the following December 3. The plaintiff contended that since the case was in default, he was entitled to a verdict for the full amount of his wages from the date of the alleged breach to the date of the trial, less amounts earned by him at other work in the meantime, and that the amount of the damages to be thus arrived at constituted the only matter to be proved, and was the only issue as to which evidence could be considered. The court agreeing only in part with the contentions of counsel for the defendant, and disagreeing altogether with the major contention of the plaintiff, directed a verdict in favor of the plaintiff for $990.12 principal, and $399.10 interest, which principal was the equivalent of the plaintiff's salary from August 8 to December 3, 1924. Exceptions to this ruling were taken in motions for a new trial and in other forms by each party, and, the motions for a new trial having been overruled, the plaintiff brought to this court a main bill of exceptions, and the defendant sued out a cross-bill. The record presents certain other questions which are not included in the above statement, but which will be dealt with hereinafter. It is our opinion that the judgment on the main bill of exceptions should be reversed, and since this would make it necessary to decide the questions raised by the cross-bill, we will endeavor to discuss the questions for decision according to their logical sequence, irrespective of whether they are presented by the main bill or by the cross-bill.

■ The defendant moved to dismiss the petition because the plaintiff did not strike the allegations as to certain items of damage, as to which this court had affirmed the judgment of the trial court sustaining demurrers of the defendant. The court did not err in overruling this motion. "If a special demurrer is urged to a petition, or other pleading, already of file, attacking only certain parts of it, and is sustained, the result is to eliminate the parts so held bad." *White* v. *Little,* 139 *Ga.* 522 (3) (77 S. E. 646); *Willingham* v. *Glover,* 28 *Ga. App.* 394 (111 S. E. 206).

■ We can not agree with the contention that the allegations of the petition made a case for the recovery of nominal damages

only. As will be shown later in this opinion, we think it was necessary for the plaintiff to continue to be a member of the brotherhood, in order to preserve the relation of master and servant under the contract sued on; but whether or not the plaintiff had the burden of making affirmative allegation as to this fact in order to state a cause of action is a different question, and is one which we do not deem it necessary now to decide. If the allegation was in fact necessary, it must have been implied in the original petition, in order for it to have been true, as stated in paragraph 26, that by virtue of the plaintiff's wrongful discharge he was "deprived of his said earnings" of so much per month, in the total sum of $6,260, from the date of his discharge to the filing of the petition. Furthermore, in paragraph 20 the petition alleged that the contract sued on was still of force. Whether or not this point was adjudicated in our first decision, we now hold that the petition stated a cause of action, not merely for the recovery of nominal damages, but for the sum of $6,260, as the amount of the earnings of which the plaintiff appeared to have been deprived at the time the suit was filed.

■ The plaintiff's suit was predicated absolutely upon the theory that the rules and regulations of the brotherhood were embodied in his contract of employment. A copy of these rules was attached to the petition, and contained many provisions which were not indicated in our first decision in this case, and some that were not referred to in the second decision. Be it said in this connection that this court did not hold, and did not intend to hold, in its original decision that the brotherhood had authority to enter into a contract with the defendant in behalf of the plaintiff member. This question was not involved, since the petition alleged, in effect, that the plaintiff *himself,* either directly or by ratification, made a contract with the defendant containing the rules and regulations of the brotherhood, as agreed to by its officers and the officers of the defendant company. See, in this connection, Piercy *v.* Louisville & Nashville R. Co., 198 Ky. 477 (248 S. W. 1042, 33 A. L. R. 322); Snow Iron Works *v.* Chadwick, 227 Mass. 382 (116 N. E. 801, L. R. A. 1917F, 755); Hudson *v.* Cincinnati &c. Ry. Co., 152 Ky. 711 (154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915B, 98).

It is unnecessary to repeat the many allegations of the plaintiff

which disclosed an intention on his part to hold the defendant to each and all the terms and conditions of the agreement between the defendant and the plaintiff's organization. Under the provisions of this agreement, we think it was necessary that the plaintiff should remain a member of the organization, in order to abide and comply with the terms and conditions of his employment, and that his resignation constituted a violation of the contract establishing that relation.

The agreement between the defendant railway company and the brotherhood, as relied on by the plaintiff, provided certain conditions of seniority among the enginemen, and then stated that "the foregoing will not prevent committees from having discharged engineers reemployed or reinstated on their former seniority districts at any time." Other rules were as follows: "Local chairmen and general chairmen will be furnished copy of correct seniority list dated January 1st and July 1st, and each one of these seniority rosters will be posted on bulletin boards at each point where there are enginemen running out, it being understood that if any person is on the scene and fails to register a complaint relative to his standing on such rosters within 60 days, a complaint from him will not thereafter be entertained by the company or the men. . . Division officers will furnish general chairmen with copy of investigation where discipline is applied, when requested. . . The right of any engineer, fireman or hostler to have the regularly constituted committee of his organization represent him in the handling of his grievances, under the recognized interpretation placed upon the schedule involved by the officials of the company and the general committee making the same, is conceded; provided, when a member of either organization has a grievance which the local committee of his organization is unable to adjust with the local officers of the company, the matter shall be handled by the two general chairmen, who shall work jointly in handling such grievance to its final conclusion. . . The engineer's organization will be permitted to represent the firemen and hostlers when and where there is no firemen's and hostlers' committee; and in such cases the firemen and hostlers will be given the same consideration in their general handling as is given the engineers."

The agreement was made on December 22, 1922, and concluded

with the following statement: "This agreement reached between the management and the committee representing the above men in engine service will remain in effect until January 1st, 1924, and thereafter until thirty (30) days written notice is given by either party desiring to make change in same." Following this were the signatures of the defendant railway company, by L. A. Downs, vice-president and general manager, and of the Brotherhood of Locomotive Engineers and the Brotherhood of Locomotive Firemen and Enginemen, by J. F. Emerson, general chairman of the former, and E. K. Cook, general chairman of the latter.

It thus appears that if the rules and regulations agreed to by the defendant railway company and the Brotherhood of Locomotive Engineers became a part of the plaintiff's contract of employment, as alleged by him, each party had the right to deal with the other through the brotherhood, or the committees and officers thereof, as to certain material matters referred to in the provisions above quoted. It is unreasonable to suppose that the brotherhood or its officers would have continued to represent the plaintiff after his resignation from the organization, and undoubtedly they would have had no authority to do so in the absence of further action on his part conferring such authority upon them. Under the plaintiff's own theory of the case, the defendant had the right to expect that his membership in the organization would be continued, in order that he might be amenable to the rules and regulations of the brotherhood, under which he was employed, and remain subject to be dealt with through this organization for certain purposes referred to in the contract, and relating to the conditions of his employment. When he resigned from the organization he in effect abrogated certain material provisions of the contract between him and the defendant, and because of this breach on his part the defendant had the right to treat the contract as ended, and to be released from all future liability thereunder.

The plaintiff contends, however, that even though the contract may have contemplated that he would continue to be a member of the organization, the defendant could not claim his resignation as a breach, in view of its own wrongful act in discharging the plaintiff at a time when he was a member. We can not agree with this contention. It is apparent that the plaintiff was seeking to treat the contract as a subsisting and binding agreement between him

and the defendant, and in such case it was incumbent upon him to preserve the status and to continue ready and able to perform his own obligations under it. *Smith* v. *Georgia Loan Co.*, 113 *Ga.* 975 (2) (39 S. E. 410) ; *Ford* v. *Lawson*, 133 *Ga.* 237 (5) (65 S. E. 444) ; *Hanson* v. *Rome*, 7 *Ga. App.* 209 (66 S. E. 552) ; *Fairmont Creamery Co.* v. *Collier*, 21 *Ga. App.* 87 (94 S. E. 56) ; *Mayor &c. of Macon* v. *Hays*, 25 *Ga.* 590 ; *Davis* v. *Cordele*, 115 *Ga.* 770 (42 S. E. .63) ; 13 C. J. 642, 650.

■ In what we have said above, we have intended to refer only to the substantive rights and liabilities of the parties. How stands the case in the light of the record, from which it appears that the defendant was in the position of having filed no answer and the case was in default? "In all cases where damages are not liquidated and a judgment by default is rendered, the plaintiff shall be required to introduce evidence and establish the amount of damages. The defendant may contest the amount of such damages before the jury, with a right to move for a new trial in respect to such damages, and [to] except as in other cases." Civil Code (1910), § 5657. By the defendant's failure to answer the petition in due time, it is committed to the proposition that the contract had not been breached by the plaintiff at the time the suit was filed; and is in like manner foreclosed as to all other. matters relating to the grounds of liability inhering in the petition. To contend that the contract was terminated on December 3, 1924, when the plaintiff resigned from the brotherhood, is to deny the plaintiff's right to recover damages for the period following that date, and to attempt a defense which goes not merely to the assessment of damages but to the basic right of recovery for such period. In the state of the record, the defendant is concluded as to its liability for the time between the plaintiff's discharge and the commencement of the action. *Lenney* v. *Finley*, 118 *Ga.* 427 (2) (45 S. E. 317) ; *Southern Bell Telephone Co.* v. *Earle*, 118 *Ga.* 506 (4) (45 S. E. 319) ; *Bowman* v. *Winn*, 16 *Ga. App.* 546 (2) (85 S. E. 787) ; *Jones* v. *Funston*, 25 *Ga. App.* 92 (4) (102 S. E. 541) ; *Whittier Mills Co.* v. *Jenkins*, 23 *Ga. App.* 328 (4) (98 S. E. 236), and cit.

By the unanswered allegations of the original petition, the plaintiff's case was conclusively established as laid, except, perhaps, as to the amount of the damages claimed. The court therefore erred

in restricting the plaintiff's recovery to the amount of the salary of which he was deprived from August 24, when he was discharged, to the date of his resignation from the brotherhood. As a matter of law, the plaintiff was entitled to recover his lost earnings as alleged in the original petition, unless this amount should be reduced by such sums as he may or should have earned at other work in the meantime, as to which the plaintiff voluntarily made proof. The plaintiff has not insisted that this was not such a case that the defendant, being in default, was prevented from contesting even the amount of the damages as claimed in the original petition, and we accordingly make no ruling upon that question.

■ The plaintiff appears to concede that he could not recover for any damages which he may have sustained subsequently to the filing of the petition, in the absence of amendments bringing his claim down to date, since he made several amendments to the petition for this purpose. This was necessarily contemplated by our decision on the first appearance of this case.

In *Roberts* v. *Crowley,* 81 *Ga.* 429 (3) (7 S. E. 740), and *Roberts* v. *Rigden,* 81 *Ga.* 440 (7 S. E. 742), each of the plaintiffs claimed damages for the entire period of the contract, although the suit was commenced before the expiration of such period. In *Perdue* v. *Cason,* 22 *Ga. App.* 284 (2) (96 S. E. 16), it was said that if the plaintiff elects to sue immediately, and the term of the contract expires before the trial, the recovery may, *under proper averments,* embrace all damages down to the expiration of the term.

The defendant by its failure to answer the petition is committed to the truth only of the averments therein made, and the plaintiff was not thereby relieved of the burden of proving the facts alleged in his amendments. *Hudson* v. *Hudson,* 119 *Ga.* 637 (4) (46 S. E. 874); *Miller* v. *Georgia Railroad Bank,* 120 *Ga.* 17 (3) (47 S. E. 525); *Brown* v. *Atlanta, Birmingham & Atlantic R. Co.,* 131 *Ga.* 259 (62 S. E. 186); *Brown* v. *Tomberlin,* 137 *Ga.* 596, 600 (73 S. E. 947). As to facts or conditions which occurred or existed subsequently to the filing of the suit, and for which the plaintiff sought no recovery in his original petition, the defendant was in no way deprived of its defenses, and could contest either its liability or the amount of the damages, as fully as if the case had not been in default. *Davis* v. *Wimberly,* 86 *Ga.* 46 (12 S. E. 208).

128

It follows that the plaintiff ought to have had a recovery for substantially more than the amount of the verdict, although for a much smaller sum than he claimed by the petition as amended.

In a case of this sort the plaintiff is entitled to recover interest as such on the principal sum awarded, provided the aggregate amount does not exceed the sum sued for. Upon this point the case is controlled by the decision of the Supreme Court in *Ansley* v. *Jordan*, 61 *Ga.* 483(3). See further, in this connection, *Earnest* v. *Nappier*, 19 *Ga.* 537 (3) ; *Roberts* v. *Prior*, 20 *Ga.* 561; *Council* v. *Hixon*, 11 *Ga. App.* 818 (4) (76 S. E. 603) ; *U. S. Fidelity & Guaranty Co.* v. *Koehler*, 36 *Ga. App.* 396 (5), 414 (137 S. E. 85).

*Judgment reversed on the main bill of exceptions; affirmed on the cross-bill. Jenkins, P. J., and Stephens, J., concur.*